IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2150-FL

| | |
|---|---|
| ANTHONY J. MOODY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LAWRENCE SOLOMON, ) | |
| ) | |
| Respondent. ) | |

This matter came before the court on the motion for summary judgment (DE # 5) pursuant to Federal Rule of Civil Procedure 56 of respondent Lawrence Solomon (hereinafter "respondent"). The matter is ripe for adjudication. For the following reasons, the court grants respondent's motion.

STATEMENT OF CASE

On September 29, 2003, in the Wilson County Superior Court, petitioner Anthony J. Moody (hereinafter "petitioner") pled guilty to eight counts of breaking and entering.[1] (Resp't's Ex. 1.) He was sentenced to eight consecutive terms of fifteen (15) to eighteen (18) months imprisonment. (Id. Exs. 4, 8, 12, 16, 20, 24, 28, and 32.) However, the sentencing judge suspended petitioner's active sentence and placed him on a thirty-six (36) month term of supervised probation. (Id.) The sentencing judge also imposed monetary conditions in the total amount of seven thousand six

---

[1] Respondent notes that petitioner's transcript of plea form indicates that petitioner pled guilty to nine counts of breaking and entering, while the judgment reflects that he pled guilty to eight counts. (Cf. Resp't's Ex. 1 and Exs. 4, 8, 12, 16, 20, 24, 28, and 32.) Respondent states that count one was dismissed on September 29, 2003. (Id. Ex. 44.) It appears, however, that the September 29, 2003 dismissal order was mislabeled as case number 03CRS50508, when it should have been number 03CRS50477. The issue has no bearing on the adjudication of this action.

hundred fifty-seven dollars and seventy-two cents ($7,657.72). Petitioner was ordered to pay the total amount of the monetary conditions imposed, along with the probation supervision fee, pursuant to a schedule determined by the probation officer. (Id.) Prior to petitioner's release, his probation officer assessed a probation supervision fee of thirty dollars ($30.00) per month and established a payment schedule for all of his financial obligations. (Id. Exs. 5, 9, 13, 17, 21, 25, 29, and 33.) Petitioner's payment schedule required payments of three hundred sixty dollars ($360.00) per month for the first ten (10) months of his probationary period and two hundred eighty dollars ($280.00) per month for the remaining months. (Id.)

On October 30, 2004, petitioner began serving his period of probation.[2] Petitioner's payments were to begin on December 1, 2004 pursuant to the plan established by his probation officer. (Id.) Between the dates of December 1, 2004 and November 11, 2005, petitioner's compliance with this payment schedule was sporadic and totaled only two hundred five ($205.00) dollars. (Id. Exs. 6, 10, 14, 18, 22, 26, 30, and 34.) These payments were applied toward petitioner's monthly probation supervision fee. (Id. Exs. 5 and 6.)

On November 11, 2005, petitioner's probation officer filed probation violation reports against petitioner for each of his eight convictions on the grounds that he violated the monetary conditions of his probation. (Id. Exs. 6, 10, 14, 18, 22, 26, 30, and 34.) A hearing regarding the matter was set for January 23, 2006. (Id.) Prior to the hearing date, petitioner paid an additional one hundred dollars ($100.00) toward his financial obligations. (Id. Ex. 2, p. 3.)

---

[2] Petitioner was incarcerated on an unrelated conviction at the time of his sentencing. Petitioner was released from his unrelated sentence on October 30, 2004. (Resp't's Ex. 2, p. 5.)

2

On January 23, 2006, Judge Stuart Albright of the Wilson County Superior Court held a probation revocation hearing. (Id. Ex. 2.) During the hearing, petitioner admitted that he willfully violated the monetary conditions of his probation without lawful excuse. (Id. Ex. 2, pp. 2-3 and 6.) Consequently, at the conclusion of the revocation hearing, Judge Albright adopted petitioner's admission as his finding and revoked petitioner's probation. (Id. Ex. 2, p. 10.) Judge Albright then sentenced petitioner to eight consecutive fifteen (15) to eighteen (18) month terms of imprisonment. (Id. Ex. 2, p. 10, and Exs. 7, 11, 15, 19, 23, 27, 31, and 35.) Petitioner did not appeal the revocation of his probation.

On June 26, 2006, petitioner filed a *pro se* motion for appropriate relief (hereinafter "MAR") in the Wilson County Superior Court, challenging his probation revocation. (Id. Ex. 36.) The Superior Court denied petitioner's MAR on July 7, 2006. (Id. Ex. 37.) Petitioner filed a second *pro se* MAR on October 17, 2006, challenging both his active sentence and his probation revocation. (Id. Ex. 38.) Then, on November 6, 2006, petitioner filed a pleading, along with receipts, indicating that he had made payments toward his monetary conditions. (Id. Ex. 39.) The Superior Court construed petitioner's November 6, 2006 filing as a third *pro se* MAR. (Id. Ex. 40.) Petitioner's second and third MARs were denied on November 7, 2006. (Id.)

On May 21, 2007, petitioner filed a *pro se* petition for writ of certiorari in the North Carolina Court of Appeals, challenging the Superior Court's November 7, 2006 denial of his second and third MARs. (Id. Ex. 41.) The Court of Appeals denied petitioner's certiorari petition on June 7, 2007. (Id. Ex. 43.)

On August 6, 2007, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleged the following: (1) the Wilson County Superior Court failed

3

to address any of the issues he raised in his MAR; (2) the State violated his rights under both the Due Process and Equal Protection Clauses of the United States Constitution; (3) the probation officer provided the Superior Court with misleading information; (4) the Superior Court did not allow him sufficient time to submit all of his receipts; and (5) the nonpayment of a fine is not a valid reason for incarceration upon revocation of probation.

On October 29, 2007, respondent filed a motion for summary judgment, arguing that two of petitioner's claims are procedurally defaulted, and that the remaining claims are without merit. Petitioner filed a response to respondent's motion on December 5, 2007.

## DISCUSSION

I.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Chelates Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its

merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

5

II. Analysis

   A. <u>Procedural Default</u>

Respondent contends that petitioner's claim that the State violated his due process and equal protection rights and his claim that his probation officer provided misleading information at his probation revocation hearing are procedurally defaulted. Under the doctrine of procedural default, a federal court is precluded from reviewing the merits of any claim that was found to be procedurally barred by the state court on adequate and independent state grounds. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). However, procedurally defaulted claims can be reviewed by a federal habeas court if the petitioner demonstrates cause and prejudice, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner did not raise the claims at issue in his first MAR, bud did raise them in his second MAR and in his certiorari petition. The MAR court held that the claims raised in petitioner's second MAR were procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419.[3] The Fourth Circuit has consistently held that N.C. Gen. Stat. § 15A-1419(a) is an independent and adequate state ground precluding federal habeas review. See Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998), cert. denied, 525 U.S. 1155 (1999); Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998), cert. denied, 525 U.S. 1150 (1999). Furthermore, petitioner fails to show cause or prejudice, or that the failure to consider the issues will result in a fundamental miscarriage of justice. Therefore, petitioner's claims that he was denied his rights under the Equal Protection Clause or the Due Process Clause and that

---

[3] N.C. Gen. Stat. § 15A-1419(a)(1) reads in pertinent part: "the following . . .[is a] ground[] for the denial of a motion for appropriate relief, including motions filed in capital cases:(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."

6

his probation officer provided misleading information at his probation revocation hearing are procedurally defaulted, and the court is precluded from reviewing these claims.

B. Post-Conviction Error

Petitioner states that the MAR court failed to address the claims he raised in his MARs. A petitioner has no cognizable federal habeas claim for alleged deficiencies in state post-conviction proceedings. Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review). Here, the sole basis for petitioner's claim is to attack the state post-conviction proceedings. Therefore, this claim is without merit.

C. Sufficiency of Time to Submit Evidence

Petitioner contends that the Superior Court did not allow him sufficient time to submit all of his receipts for the payments he made on his financial obligations. Respondent contends that this contention is not supported by the state court record. Respondent is correct. The transcript from the probation violation hearing indicates that petitioner paid three hundred five dollars ($305.00) as of the date of the hearing. (Resp't's Mem. Exs. 2, pp. 7-8, and Ex. 3.) Petitioner filed copies of receipts with his third MAR on November 6, 2006. (Id. Ex. 38.) However, the receipts attached to petitioner's third MAR are copies of receipts that had previously been submitted to the Superior Court for his probation revocation hearing. (See id. Exs. 2, pp. 7-8, 3, and 38.) Petitioner has not submitted evidence of any other receipts that were not considered by the Superior Court during petitioner's probation revocation hearing. Therefore, petitioner's fourth claim is without merit.

7

D.  Incarceration as Insufficient Remedy

Petitioner argues that the failure to pay a fine is not a valid reason for probation revocation and incarceration. Petitioner raised this claim in his first MAR. The MAR court adjudicated this claim and denied it as without merit.

The United States Supreme Court has held that a defendant's probation may not be revoked for failure to pay a fine or make restitution if the default results from a condition beyond his control. See Bearden v. Georgia, 461 U.S. 660, 668-69 (1983). However, the Court held that "[i]f the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection . . . ." Id. The Court in Black v. Romano, 471 U.S. 606, 620 (1985), states that a probationer must make a bona fide effort to pay his fine or restitution. See also United States v. Genovese, 836 F.2d 1343, 1988 WL 1082, *1 (4th Cir. 1988) (unpublished) ( stating that "court may revoke probation and order imprisonment if the probationer willfully refused to pay or failed to make a good faith effort to do so.")

At the January 23, 2006 probation revocation hearing, petitioner's counsel cites petitioner's spotty work history as an excuse for paying the fine. (Resp't's Mem. Ex. 2, p. 6.) However, the record reflects that petitioner had periods of employment. (Id. Ex. 2, pp. 5-7.) Petitioner's counsel does not provide an excuse for nonpayment during these periods. Nor does his counsel establish that petitioner made a bona fide effort to repay his financial obligations. Instead, petitioner's counsel admitted that petitioner willfully failed to pay his fine without lawful excuse. (Id. Ex. 2, pp. 2-3.) Additionally, petitioner's probation officer testified that petitioner had not provided him any reason for his failure to make payments on his financial obligations. (Id. Ex. 2, pp. 4 and 8.) Finally, petitioner presented no evidence at his hearing that he would not continue to violate the conditions

of his probation. See United States v. Bartrug, 61 F.3d 901, 1995 WL 444836, *1 (4th Cir. July 28, 1995) (unpublished) (finding court's probation revocation was not unduly harsh in light of absence of persuasive evidence the defendant would not continue to violate conditions of release).

Based upon petitioner's admission, the Superior Court judge held that petitioner willfully violated his probation without a lawful excuse. (Resp't's Ex. 2, p. 11.) Because the Superior Court's probation revocation was based upon petitioner's admitted willful failure to pay his financial obligations, and not his inability to pay his financial obligations, petitioner's incarceration does not violate Bearden. As a result, the decision of the MAR court was not contrary to, nor did it involve an unreasonable application of clearly established federal law. Therefore, this claim is without merit.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 5) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this 1st day of August, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge